UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TUSCOLA WIND III, LLC,

                Plaintiff,                        Case No. 17-cv-10497

v                                          Honorable Thomas L. Ludington

ALMER CHARTER TOWNSHIP, et al,

                Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS

On February 15, 2017, Plaintiff Tuscola Wind III, LLC, ("Tuscola") filed a complaint naming the Almer Charter Township and that Township's Board of Trustees as Defendants. ECF No. 1. Count One of the Complaint is the "Claim of Appeal." Compl. at ¶¶ 100–124. Tuscola Wind's claims arise out of Defendants' denial of a Special Land Use Permit ("SLUP") that would have permitted Tuscola Wind to construct the "Tuscola III Wind Energy Center" in Tuscola County, Michigan. Compl. at 6. Oral argument on the claim of appeal was held on October 5, 2017. Approximately one month later, the Court issued an opinion and order affirming the Almer Charter Township's denial of the SLUP application. ECF No. 39.

On November 17, 2017, Tuscola filed a motion for reconsideration of the Court's order. ECF No. 41. Tuscola argues that several defects exist in the Court's opinion. First, Tuscola argues that the Court erred by concluding that the Board's decision was a legislative in nature and not administrative. Second, Tuscola argues that the Court erred by deferring to the Board's interpretation of the Almer Township's Zoning Ordinance. And, third, Tuscola argues that the Court did not consider the whole record on appeal and thus improperly concluded that the Zoning Ordinance should not be interpreted as imposing an $L_{EQ}$ standard.

On January 17, 2018, a third settlement conference was held. At that conference, the parties continued discussions that had been ongoing. No settlement was reached. Several days later, Tuscola filed a motion for sanctions against Defendants. ECF No. 46. In that motion, Tuscola argues that the Defendants should reimburse Tuscola for the expenses it incurred in association with the settlement conferences because of Defendants' bad faith. For the following reasons, Tuscola's motion for reconsideration and Tuscola's motion for sanctions will both be denied.

## I.

The record on appeal was summarized, at length, in the November 3, 2017, opinion and order. ECF No. 39. That summary will be adopted herein in full. To the extent that Tuscola argues that the Court made palpable errors in its summary or interpretation of the record, those objections will be addressed below as relevant to the disposition of the motion.

## II.

Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order, but must do so within fourteen days. A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, No. 2:15-CV-10203, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

## III.

Tuscola's motion for reconsideration primarily challenges two aspects of the November 3, 2017, opinion and order. First, Tuscola argues that the Court improperly characterized the Board's interpretation of the ordinance and denial of Tuscola's SLUP application as a legislative, not administrative, action. This is important. Tuscola believes that conclusion formed the basis for the Court's later deference to the Board's interpretation of its ordinance. As discussed below, that is a misapprehension of the Court's rationale. Rather, the classification of the Board's action was relevant to the question of whether Tuscola is appealing from a "final" decision, a necessary condition under the Michigan Constitution to judicial review. The Court agreed with Tuscola that the decision was final. To the extent Tuscola now challenges that conclusion, Tuscola is thus requesting the Court to reverse a portion of the opinion wherein Tuscola prevailed. While the assertion is a bit puzzling, the question of whether the Court has jurisdiction to address the claim of appeal is a threshold question and thus will be considered first.

Second, Tuscola argues that the Court improperly deferred to the Board's interpretation of the Zoning Ordinance and thus reached an improper conclusion regarding the meaning of its sound limitation. Because the Court conducted a de novo review of the ordinance's language and concluded that the plain language of the statute necessitated an $L_{max}$ interpretation, Tuscola's arguments regarding the appropriate level of deference merely attack an alternative basis for the affirmance. Even if the issue of deference is reached, Michigan law is clear that consideration of a township board's interpretation of its ordinance is appropriate, even required, when interpreting that ordinance.

## A.

In Defendant's appellate brief arguing that the denial of the SLUP application should be affirmed, Defendants argued that Tuscola did not exhaust its administrative remedies and thus that the appeal was not ripe for review. Appellee Br. at 7, ECF No. 32. Specifically, Defendants argued that "unless the zoning authority has reached a final decision and the plaintiff exhausts every administrative appeal, its complaint is not ripe for judicial review." *Id.* Tuscola did not obtain a decision from the Zoning Board of Appeals ("ZBA") here, and so Defendants argued that the current appeal was procedurally deficient. In response, Tuscola argued that "a ripeness challenge" was not appropriate "when a party claims an appeal from a township's administrative decision." Appellant Reply Br. at 1, ECF No. 37. Tuscola alternatively argued that it "did not need to request a variance after the Board denied its application because the denial of a SLUP—like the denial of a variance—is a final, non-judicial decision regarding the land's use that is ripe for review." *Id.* at 2 (citing *Arthur Land Co., LLC v. Otsego Cty.*, 645 N.W.2d 50, 58 (Mich. Ct. App. 2002)). Tuscola asserted that "[a] township board's decision on a SLUP application is a final decision that does not need to be appealed to the ZBA unless required by the zoning ordinance." *Id.* (citing *Carleton Sportsman's Club v. Exeter Twp.*, 550 N.W.2d 867, 867–68 (Mich. Ct. App. 1996)). According to Tuscola, the Almer Zoning Ordinance does not require SLUP denials to be appealed to the ZBA, meaning that the current appeal was proper.

In the November 3, 2017, opinion and order, the Court concluded that the Board's denial of the SLUP application was a final decision that did not need to be appealed to the ZBA. Tuscola's current challenge misunderstands the Court's intended reasoning, and so that reasoning will be summarized.

First, Tuscola contends that the Court's jurisdiction over Tuscola's claim of appeal is governed by article 6, section 28 of the Michigan Constitution. Nov. 3, 2017, Op. & Order at 28. That provision authorizes "the courts" to directly review "[a]ll *final* decisions, findings, rulings and orders of any *administrative* officer or agency existing under the constitution or by law." *Id.* (quoting Mich. Const., art. 6, § 28 (emphasis added)). Second, the Almer Zoning Ordinance establishes a ZBA. *Id.* Third, "M.C.L. 125.3605 specifies that '[t]he decision of the zoning board of appeals shall be final. A party aggrieved by the decision may appeal to the circuit court.'" *Id.* Accordingly, "the Michigan Zoning Enabling Act specifies that, generally, a decision regarding a zoning ordinance is final for purposes of article 6, section 28 of the Michigan Constitution only after the zoning board of appeals has decided the issue." *Id.* Fourth, the November 3, 2017, opinion and order rejected Tuscola's argument that only certain kinds of constitutional claims are subject to finality challenges. *Id.* at 29–30 ("If the SLUP application has not been denied in a final, nonjudicial determination, this Court has no jurisdiction under article 6, section 28 of the Michigan Constitution."). In its motion for reconsideration, Tuscola does not challenge any of the preceding analysis.

The Court then turned to "[t]he determinative question[:] . . . whether the Almer Township Board's denial of the SLUP application was a final decision." *Id.* at 30. In its brief, Tuscola argued that SLUP application denials are final decisions that do not need to be appealed to the ZBA. There is some support for that assertion: "[W]here a township zoning ordinance does not provide for review of a request for a special land-use permit by a zoning board of appeals, the township board's decision is final and subject to appellate review by the circuit court pursuant to Const. 1963, Art. 6, § 28." *Carleton Sportsman's Club v. Exeter Twp.*, 550 N.W.2d 867, 869 (Mich. Ct. App. 1996).

- 5 -

Thus, the question becomes whether the Almer Township Zoning Ordinance permits appeals of SLUP denials to the ZBA.

As the Court explained, "[t]he Zoning Ordinance gives the ZBA general jurisdiction to 'hear and decide appeals where it is alleged there is error of law in any order, requirement, decision or determination made by the Zoning Administrative or administrative body in the enforcement of this Ordinance.'" Nov. 3, 2017, Op. & Order at 31 (quoting Almer Twp. Zoning Ord., Art. 23, § 2302 (emphasis added)). Accordingly, if the Board's denial of the SLUP application was a decision by an administrative body, appeal to the ZBA is permitted and Tuscola's failure to exhaust its ZBA appeal renders the current claim of appeal deficient.

The Court found, however, that the SLUP denial was a legislative, not administrative, decision in nature.

> A township board is typically a legislative body, but can act in an administrative capacity in certain situations. The Michigan Court of Appeals has explained that "approval of special use permits" is typically an administrative function, but "where the city council is given the discretion to review the issue de novo and accept or reject the recommendations of the planning commission in the ordinance, the council's power is, instead, legislative." *Swiecicki v. City of Dearborn*, No. 262892, 2006 WL 2613593, at *7 (Mich. Ct. App. Sept. 12, 2006) (citing *Sun Communities v. Leroy Twp*, 617 NW2d 42 (Mich. Mc. App. 2000) and *Hesse Realty, Inc v. Ann Arbor*, 61 Mich. App 319, 323–324 (1975)). The Almer Township Zoning Ordinance grants the Township Board discretion to conduct a de novo review of the Planning Commission's recommendations regarding SLUP applications, and thus Tuscola is appealing from a legislative decision.

*Id.*

The Court reasoned that the Zoning Ordinance does not allow appeals to the ZBA when a SLUP application is denied after interpretation of the language of the ordinance (that is, appeals of legislative decisions) and so found that "the Township Board's decision is a final and appealable order per *Carleton*." *Id.* at 31–32.

In its motion for reconsideration, Tuscola now argues that *Swiecicki* was wrongly decided and that the Court should have concluded that the Board's denial of the SLUP application was an administrative decision and thus not entitled to deference. Specifically, Tuscola argues that *Swiecicki* misinterpreted the Michigan Court of Appeal's holding in *Hessee Realty, Inc. v. City of Ann Arbor*, which *Swiecicki* partially relied upon. 232 N.W.2d 695, 697 (Mich. Ct. App. 1975).

In *Hessee*, the Michigan Court of Appeals was adjudicating a dispute over the denial of a site plan and building permit application. *Id.* at 696. The threshold question was the standard of review for the city council's decision. *Id.* at 697. The Court of Appeals explained that the standard was different depending on whether the City Council's denial was "legislative" or "administrative." *Id.* And that distinction, in turn, was dependent on "the breadth of defendant's discretion." *Id.* "At one extreme the City Council might be given broad 'legislative' powers to review the proposed site plan De novo, independent of Planning Commission findings, and be able to reject a plan which complies with all the statutory standards because it deems the plan to be contrary to  its conception of public welfare." *Id.* At the other extreme, "the Council would be limited, much as an 'administrative' appellate board, to the job of reviewing the Planning Commission's deliberations and recommendations to make sure that they are consistent with applicable standards." *Id.* The Court of Appeals found that the "Commission's duty is apparently limited to a determination that site plans meet such standards and, through a review by city agencies, comply with the relevant, specific 'legal requirements'" and so the denial was an administrative decision. *Id.* at 698.

Tuscola argues that the key holding in *Hessee* was that a denial is legislative only if the plan complied "with all statutory standards" but still denied the plan as contrary to the "public

welfare." *Id.* at 697. That distinction, of course, is not present in *Swiecicki*.[1] The *Hessee* Court concluded that the denial in that case was administrative because "once the requirements of 'statute, ordinance, and regulation' have been satisfied, the Commission must approve the site plan." *Id.* Here, the Board's denial of the SLUP application clearly involved some consideration of whether the ordinance's requirements had been met, but the most contested issue was the proper interpretation of the sound limitation section of the ordinance. The Michigan Supreme Court has explained that zoning determinations made on "individual grounds" are administrative decisions, while decisions "of general application to all land in the community" are legislative. *Kropf v. City of Sterling Heights*, 215 N.W.2d 179, 192–93 (Mich. 1974).

Because the Board's interpretation of the sound provision is arguably "of general application to all [wind energy applications] in the Township, it could be construed as a legislative decision. Certainly, and unlike in *Hessee*, the primary basis by which the Board denied the SLUP application was premised on a determination of what the requirements of the ordinance were in the first place, not just a conclusion that Tuscola had not complied with those "requirements." This kind of de novo review of the ordinance's meaning seems distinct from a simple review of the Planning Commission's conclusions regarding whether the SLUP application complied with existing Zoning Ordinance requirements. Michigan law does not provide clear lines of delineation on this issue.

But, as Defendants argue, all of this is beside the point. It is not clear that Tuscola apprehends the implications of its arguments. If, as Tuscola argues, the SLUP denial was

---

[1] Tuscola argues that *Hessee* is published and *Swiecicki* is not, meaning that *Hessee* is controlling authority. As a federal court applying state law, however, the relevant inquiry is focused on predicting what the Michigan Supreme Court would rule. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). Decisions by state courts of appeals are important, but only to the extent they provide context for predicting the state supreme court's holding. *Id.* The published/unpublished distinction is relevant to that analysis, but not controlling.

administrative, then the Almer Zoning Ordinance authorizes the ZBA to review the merits of the Board's decision. *See* § 2302(2) (holding that the ZBA has jurisdiction to "hear and decide appeals where it is alleged there is error of law in any order, requirement, decision or determination made by the Zoning Administrator or administrative body in the enforcement of this Ordinance");[2] *id.* at § 2302(3) ("holding that the ZBA has jurisdiction to "interpret the zoning ordinance text"). Because the ZBA had jurisdiction over the SLUP denial, the Board's decision was not final until Tuscola exhausted its ZBA appellate rights. *See Carleton Sportsman's Club*, 550 N.W.2d at 869. *See also Lubienski v. Scio Twp.*, No. 288727, 2010 WL 1052284, at *3 (Mich. Ct. App. Mar. 23, 2010) ("The MZEA anticipates that final decisions are made by the ZBA, which may then be appealed to the circuit court."); *Sun Communities*, 617 N.W.2d at 45 (similar). The necessary implication of Tuscola's current argument, then, is that the first count of the complaint must be dismissed for lack of finality. *See* Mich. Const. art 6, § 28 (providing "the courts" jurisdiction to review "[a]ll *final* decisions") (emphasis added).

In its zeal to limit the amount of deference which this Court should extend to the Township Board when it is interpreting its own ordinance, Tuscola advances a new and equally puzzling argument. Tuscola argues that the Township Board's decision must have been primarily administrative in nature because only "findings, rulings, and orders of *any administrative officer or agency* existing under the constitution or by law, which are judicial or quasi-judicial and affect

---

[2] Tuscola attempts to argue that this section is inapplicable because the denial was "an administrative permitting decision rather than an administrative enforcement decision." Pl. Mot. Recon. at 3, ECF No. 41. This argument is completely untethered from any legal or factual support. Tuscola correctly argues that, if the SLUP application complied with the ordinance, then the Township was required to grant it. To the extent the Township concluded that Tuscola's proposed development did not comply with the zoning ordinance requirements, Defendants were manifestly "enforcing" the provisions of the ordinance. And, further, § 2302(3) of the zoning ordinance clearly provides the ZBA authority to interpret the text of the zoning ordinance, which constitutes a fundamental component of Tuscola's current claim of error. Indeed, Tuscola actually argues, elsewhere in its motion for reconsideration, that the "ZBA, not the Board, is given the authority to interpret the provisions of this ordinance when a requirement, standard, or other text is unclear." Mot. Recon. at 6 (internal citations omitted).

private rights or licenses are subject to judicial review." Mot. Recon. at 4 (quoting Mich. Const. art 6, § 28 and adding emphasis). Because Tuscola has appealed the decision denying the SLUP application pursuant to that section, it reasons the decision must have been administrative in nature. But the question of Tuscola's right to judicial review of the Board's decision in the first instance has not been raised by Tuscola or the Township. Because both parties have assumed that art. 6, § 28 governs Tuscola's appeal, the threshold issue of that section's applicability in this circumstance has not been explored.

## B.

In recognition of the opaque nature of Michigan law with respect to the finality issue, Tuscola's challenges to the Court's substantive analysis will be briefly considered. In essence, Tuscola argues that the Court "improperly deferred to the Board's interpretation of the Ordinance." *Id.* In the November 3, 2017, opinion and order, the Court articulated the law as follows:

> Michigan Courts have repeatedly confirmed that courts should defer to municipal interpretations of zoning ordinances. *See Macenas v. Vill. of Michiana*, 446 N.W.2d 102, 110 (Mich. 1989) ("[T]he import of our case law is that a reviewing court is to give deference to a municipality's interpretation of its own ordinance."); *Id.* ("[I]n cases of ambiguity in a municipal zoning ordinance, where a construction has been applied over an extended period by the officer or agency charged with its administration, that construction should be accorded great weight in determining the meaning of the ordinance."); *Davis v. Bd. of Ed. for Sch. Dist. of River Rouge*, 280 N.W.2d 453, 454 (Mich. 1979) ("We acknowledge that the construction placed upon a statute by the agency legislatively chosen to administer it is entitled to great weight."); *Paye v. City of Grosse Pointe*, 271 N.W. 826, 828 (Mich. 1937) (holding that a municipality's construction of an ordinance is not binding on a court, but that the municipality's construction is "always entitled to the most respectful consideration" and should not "be overruled without cogent reasons") (internal citations omitted). *But see Kalinoff v. Columbus Twp.*, 542 N.W.2d 276, 277 (Mich. Ct. App. 1995) (holding that deference to the zoning board's interpretation would not be given because "when the language used in an ordinance is clear and unambiguous, we may not engage in judicial interpretation, and the ordinance must be enforced as written").

Nov. 3, 2017, Op. & Order at 33.

The Court also summarized *Sinelli v. Birmingham Bd. of Zoning Appeals*, 408 N.W.2d 412, 414 (Mich. Ct. App. 1987), which the Michigan Supreme Court approvingly cited in *Macenas*. In *Sinelli*, the Michigan Court of Appeals found that the City of Birmingham had arrived at a "reasonable interpretation" of its zoning ordinance and explained that "[t]his Court will not sit in judgment on matters wholly within the reasonable discretion of local zoning boards whose decisions are regarded as final and binding unless caprice, abuse of discretion, or arbitrary action is provable." *Id.* at 414–15.

The Court additionally explained that, because the "legislative body which enacted the Zoning Ordinance in the first place" was the entity interpreting the language of the ordinance, "the importance of deferring to the Township Board's interpretation of the statute is even greater." Nov. 3, 2017, Op. & Order at 34. That was because the ultimate purpose of statutory interpretation is to "determine the intent of the legislative body that enacted the statute or ordinance." *Macenas*, 446 N.W.2d at 111.

The Court summarized the standard of review as follows:

> [T]his Court does not sit in de novo review of the Zoning Ordinance provision regarding noise emission levels (assuming that the ordinance is ambiguous). Rather, the question is whether the Township Board's interpretation of the ordinance was "reasonable." *Sinelli*, 408 N.W.2d at 414. *See also Macenas*, 446 N.W.2d at 112. If the Board's decision was the result of "caprice, abuse of discretion, or arbitrary action," then it was not reasonable. *Sinelli*, 408 N.W.2d at 415. But unless there are "cogent reasons" to conclude that the Board's consideration was not reasonable, the Board's interpretation must be affirmed. *Macenas*, 446 N.W.2d at 112.

Nov. 3, 2017, Op. & Order at 35.

Tuscola now argues that *Macenas* is no longer good law, citing *In re Complaint of Rovas Against SBC Michigan*, 754 N.W.2d 259 (Mich. 2008). *Rovas* involved judicial review of the Michigan Public Service Commission's interpretation of the Michigan Telecommunications Act.

*Id.* at 262. The "primary issue in [the] case [was] the proper standard of review of an administrative agency's construction of a statute." *Id.* at 264. The Michigan Supreme Court explained that "agencies perform both 'quasi-legislative' and 'quasi-judicial' functions." *Id.* at 266. Depending on the function, agency decisions are evaluated differently. When the agency conducts "fact-finding in contested cases," the "agency's findings of fact are entitled to deference by a reviewing court." However, the Michigan Supreme Court "has uniformly held that statutory interpretation is a question of law that this Court reviews de novo." *Id.*

The *Rovas* Court then explained that, in the past, Michigan Courts have often "muddle[d] the distinct standards of review":

> While there are some opinions that seem to stand for the proposition that agency statutory interpretations are reviewed for "reasonableness" or an "abuse of discretion," those standards do not apply to the interpretation of a statute, and they threaten the separation of powers principles discussed earlier by allowing the agency to usurp the judiciary's constitutional authority to construe the law and infringe on the Legislature's lawmaking authority.

*Id.* at 267.

The Michigan Supreme Court then clarified the proper standard of review of "agency statutory interpretation":

> This standard requires "respectful consideration" and "cogent reasons" for overruling an agency's interpretation. Furthermore, when the law is "doubtful or obscure," the agency's interpretation is an aid for discerning the Legislature's intent. However, the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue.

*Id.* at 267.

In articulating this standard, the *Rovas* Court cited *Boyer-Campbell Co. v. Fry*, 260 N.W. 165 (Mich. 1935), which was also cited by the Court in *Macenas*. 446 N.W.2d at 110. *Rovas* involved a state administrative agency interpreting a Michigan statute. A review of Michigan cases

citing *Rovas* reflects that the vast majority of those cases involve the same set of facts. In fact, only a very small number of cases citing *Rovas* involve ordinances or resolutions passed by local municipalities at all. The single such example found by the Court is *Hardaway v. Wayne Cty.*, 835 N.W.2d 336, 338 (Mich. 2013). In *Hardaway*, the plaintiff was seeking additional life and health insurance benefits pursuant to a resolution passed by the Wayne County Commission. Wayne County denied her request, and the Supreme Court found that the Defendant's denial was appropriate based on the language of the resolution. In so finding, the Michigan Supreme Court explained that "[i]f the language of the resolution is certain and unambiguous, courts must apply the resolution as written" and found that the resolution was "not ambiguous." *Id.* at 338. The *Hardaway* Court cited *Rovas* only to explain that its interpretation of the resolution was guided, in part, by the fact that the county commission had interpreted the resolution the same way for nearly 20 years. *Id.* at 339.

Neither party has identified post-*Rovas* authority involving a township board's interpretation of its own zoning ordinance. And the few such cases the Court has identified all cite to *Macenas*, not *Rovas*, as the controlling authority. *See Epicurean Developments, LLC v. Summit Twp.*, No. 329060, 2017 WL 786880, at *5 (Mich. Ct. App. Feb. 28, 2017) (explaining that, when a zoning ordinance is ambiguous, great weight should be given to the agency's construction when that construction has existed over an extended period and citing both *Macenas* and *Sinelli*); *Charter Twp. of White Lake v. Ciurlik Enterprises*, No. 326514, 2016 WL 2772160, at *4 (Mich. Ct. App. May 12, 2016) (citing *Macenas* for the proposition that "a reviewing court is to give deference to a municipality's interpretation of its own ordinance") (internal citations omitted)); *Cty. of Mason v. Indian Summer Co-op., Inc.*, No. 301952, 2012 WL 3536789, at *4 (Mich. Ct. App. Aug. 16, 2012) (same); *Kalkman v. City of Vill. of Douglas*, No. 306051, 2012 WL 4215834,

at *2 (Mich. Ct. App. Sept. 20, 2012) (citing *Macenas* as establishing the standard for interpretations of zoning ordinances).

Accordingly, it is manifestly clear that *Rovas* does not overrule or repudiate *Macenas*. There are two reasons why this is true. First, *Rovas* simply clarified and refined the analysis as previously articulated in *Macenas*. *Macenas* used the term "deference," which *Rovas* cautioned courts against using, but both decisions make abundantly clear that "the agency's interpretation is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons." *Compare Rovas*, 754 N.W.2d at 270 *with Macenas*, 446 N.W.2d at 110.

Second, a court's ultimate concern is "the Legislature's intent as expressed in the language of the statute," with the "agency's interpretation" acting simply as "an aid for discerning the Legislature's intent." *Rovas*, 754 N.W.2d at 267. When, as in *Rovas*, an administrative agency is interpreting a statute, that interpretation can only offer limited insight into the Michigan legislature's intentions in passing the statute. But when, as in *Macenas*, the prior interpretation is by the same entity which passed the law, that interpretation provides much more probative information about the legislative intent behind the ordinance. *See also Ciurlik Enterprises*, 2016 WL 2772160, at *4 (citing *Macenas* for the proposition that "a reviewing court is to give deference to a municipality's interpretation of its own ordinance") (internal citations omitted)); *Indian Summer Co-op., Inc.*, 2012 WL 3536789, at *4 (same).

Admittedly, *Rovas* directly repudiates the idea that "agency statutory interpretations are reviewed for 'reasonableness'" and the November 3, 2017, opinion and order does use that terminology in articulating the standard of review and interpreting the statute. *See* Nov. 3, 2017, Op. & Order at 35, 38, 42. That language was rejected in *Rovas* and thus should not have been used.

But notwithstanding the imprecise verbiage in portions of the opinion and order, a review of the Court's substantive reasoning makes clear that the analysis as articulated in *Macenas* and *Rovas* was essentially conducted. The Court began by conducting a de novo review of the noise provision's meaning. *See id.* at 35–39.[3] The Court's conclusion pursuant to that de novo review provided the primary basis for affirming the Board's decision and did not involve any deference to the Board's legal findings.

Second, the Court explained that even if the noise section was ambiguous, principles of statutory interpretation supported the same conclusion. *Id.* at 39–44. In this section, the Court did provide deference to the Board's interpretation. As discussed above, Michigan law directs courts to not reject agency interpretations unless there are cogent and persuasive reasons to do so. The *Rovas* Court explained that "the primary question presented is whether the interpretation is consistent with or contrary to the plain language of the statute." 754 N.W.2d at 270. Thus, if the Board's interpretation had conflicted with the plain language of the statute, then this Court could not have adopted that view. But the Court concluded that "the best interpretation of § 1522(C)(14) is that it unambiguously provides for a $L_{max}$ standard." Nov. 3, 2017, Op. & Order at 39. The

---

[3] "The '[s]hall not exceed' language in § 1522(C)(14) is facially indistinguishable from a $L_{max}$ standard. If a wind turbines emitted 46 dBA of noise, then a common-sense reading of the provision (relying only on the language of the provision and no extraneous information) would conclude that the turbine had violated § 1522(C)(14). No language in § 1522(C)(14) would support a conclusion that one instantaneous emission of 46 dBA of noise is not violative of the statute as long as the turbine's average emission does not exceed 45 dBA.

. . .

The Huron County Ordinance thus defines the $L_{EQ}$ standard by using the words "equivalent" and "continuous." Conversely, the Almer Township Zoning Ordinance is devoid of any terms that correspond to an $L_{EQ}$ standard: there is no mention of equivalent, continuous, or average sound levels. Rather, § 1522(C)(14) simply specifies that the emissions "[s]hall not exceed" 45 dBA. That language is coterminous with the definition of $L_{max}$ (as defined by Tuscola itself): If the wind turbine emits a sound that exceeds 45 dBA, the ordinance has been violated. The ordinance does not, on its face, provide for an averaging of noise emissions. Thus, the best interpretation of § 1522(C)(14) is that it unambiguously provides for a $L_{max}$ standard. Any alternative interpretion would require inclusion of additional language or terms; the $L_{max}$ standard alone is consistent with the words, and only the words, of § 1522(C)(14)."

*Id.* at 38–39.

Board's interpretation, then, was consistent with the plain language of the statute and accordingly provided additional support for the Court's interpretation.

Tuscola has consistently argued that the $L_{EQ}$ metric is best suited, as a matter of policy, for measuring wind turbine noise emissions. But, as the Court sought to articulate, that is not the question raised by the claim of appeal. "The court is not free to substitute its judgment by imposing what it considers to be the wisest version of the ordinance, but is confined to an analysis of the text of the ordinance and, in the face of ambiguity, a determination of what the legislative body that enacted the ordinance intended by the language in question." *Macenas*, 446 N.W.2d at 110. The metric which other wind ordinances use is relevant in interpreting the meaning of the ordinance, but that is only one factor to consider. *See* Nov. 3, 2017, Op. & Order at 40 ("[S]ome courts . . . have relied upon industry standards when interpreting statutory language."). Because of the plain language of the statute, the Board's interpretation, and the equivocal evidence in the record regarding industry practices, the Court concluded that there were not cogent reasons to overrule the Board's interpretation. The arguments which Tuscola now raise do not call that conclusion into doubt.[4]

Tuscola argues that the Court "erred by failing to cite to or rely on general principles of interpretation that are necessary to properly interpret an unclear ordinance." Mot. Recon. at 11. Specifically, Tuscola cites to the principle that "the language of an ordinance should be interpreted

---

[4] Paradoxically, Tuscola also faults the Court for rejecting "the parties' consensus [that the ordinance was ambiguous] and conclud[ing] that 'shall not exceed' is 'facially indistinguishable' from an $L_{max}$ standard. Mot. Recon. at 9. Tuscola thus contradicts itself within the span of mere pages. On the one hand, Tuscola argues that the Court should not defer to the Board's interpretation of the ordinance. On the other hand, Tuscola argues that the Court should defer to the parties' interpretation regarding the ambiguity of the ordinance.

Regardless, Tuscola's challenges to the Court's de novo review of the ordinance, *see* Mot. Recon. at 7–10, were addressed and rejected in the original order. *See* Nov. 3, 2017, Op. & Order at 35–39. "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3).

*in favor of a property owner* when doubt exists as to the legislative intent" and that "an ordinance should be interpreted to avoid absurd [or unlawful] results." *Id.* (emphasis in original). These principles, of course, only become relevant if the ordinance is ambiguous. And, more importantly, the principle that ambiguous ordinances should generally be interpreted in favor of a property owner is meant to operate as a backstop, similar to the rule of lenity in criminal cases. In other words, when faced with an ambiguous ordinance, a court must first attempt to "discover and give effect to the legislative intent." *Exec. Art Studio, Inc. v. Charter Twp. of Kalamazoo*, 674 F. Supp. 1288, 1290 (W.D. Mich. 1987). The court is to extend every effort to "give effect to all words in the ordinance and . . . not interpret the ordinance in a manner which deprives some terms of any force and effect." *Id.* The court should fallback to adopting the most property-owner favorable interpretation only if those efforts at discovering legislative attempt fail. Here, the Board's intent in passing the wind ordinance was not so illusory.

Tuscola relatedly argues that the Court erred in interpreting the ordinance as imposing an $L_{max}$ standard because doing so would render the Ordinance exclusionary. Mot. Recon. at 11–12. As the Court explained, Tuscola has fallen far short of raising even a colorable claim that the ordinance, if interpreted as including an $L_{max}$ standard, would constitute exclusionary zoning. Nov. 3, 2017, Op. & Order at 44–46. As before, the transparent implication of Tuscola's argument is that it would be absurd for the Township to impose zoning restrictions which would prevent Tuscola from siting an economically viable wind energy development in the township. That outcome would not necessarily be absurd or unlawful.

Tuscola argues, at length, that the Court failed to consider aspects of the factual record. In particular, Tuscola contends that the Court failed to recognize certain inherent weaknesses in Mr. Standlee's opinions regarding the appropriate metric. Mot. Recon. at 12–14. That testimony was

discussed at length in the prior order. Nov. 3, 2017, Op. & Order at 40–42. Tuscola thus simply reiterates its already rejected arguments. Plaintiff also repeatedly points to statements in which certain individuals admitted that it might be reasonable to interpret the ordinance was containing a $L_{EQ}$ standard. As the Court has explained, even if the ordinance might reasonably be interpreted as containing an $L_{EQ}$ standard, the "best interpretation" (the one most consistent with the legislature's apparent intent) is that the ordinance imposes an $L_{max}$ standard.[5]

In short, Tuscola's motion for reconsideration will be denied because none of the arguments raised undermine the ultimate conclusion. The refinements in Michigan law which Tuscola identifies are compatible with the Court's prior analysis. The plain language of the ordinance imposes an $L_{max}$ standard, an investigation into the legislative intent in passing the ordinance mandates the same conclusion, and, accordingly, there is substantial evidence in the record to support the Board's denial of the SLUP application.

## IV.

Tuscola has also filed a motion for sanctions against Defendants. ECF No. 46. Tuscola argues that Defendants did not participate in mediation and settlement negotiations in good faith, and so should be directed to pay $33,118.71 to Tuscola. Tuscola contends that it is not arguing "that the Township was *required* to settle the case, or even to provide an offer during the mediation or settlement conference." Mot. Sanctions at 13 (emphasis in original). Instead, Tuscola argues that Defendants had an obligation to "come to the mediation and settlement conference prepared to explore the possibility of settlement and to respond to offers made to it in good faith." *Id.* at § 13–14. Thus, Tuscola's motion is not premised on "the Township's refusal to make an offer or a

---

[5] Tuscola also reraises its prior argument that, at the very least, the Board should have imposed a 10-minute Leq standard. Because such a standard would be inconsistent with the plain language of the ordinance and the legislature's apparent intent, the Board was under no obligation to do so (and, in fact, may have lacked the legal authority to do so absent an amendment to the ordinance).

counteroffer," but on Tuscola's belief that "the Township never had any intention of discussing a good faith resolution or compromising with Tuscola." Pl. Reply Br. at 4–5, ECF No. 53.

**A.**

District courts have the inherent power to award sanctions when parties act in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). That power is derived from the court's "equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). "'The bad faith considered by courts construing this exception generally falls within one of three categories: (1) bad faith occurring during the course of the litigation; (2) bad faith in bringing an action or in causing an action to be brought; and (3) bad faith in the acts giving rise to the substantive claim.'" *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 418 (6th Cir. 1992) (quoting *Shimman v. Int'l Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1230 (6th Cir. 1984)). The district court's inherent power to sanction can be directed against both attorneys and parties. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008). "While district courts are required to articulate a basis for awarding sanctions, nothing requires them to explain their reasons for not ordering sanctions." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. at 44.

Although Tuscola relies upon the Court's inherent power to sanction, it also notes that Federal Rule of Civil Procedure 16(f)(1)(B) provides that a court may sanction parties if they do not participate in a conference in good faith. If a party dramatically changes its settlement position after agreeing to negotiate but does not inform the other party, they may not have participated in the settlement conference in good faith. *See Koehn v. Tobias*, 866 F.3d 750, 753 (7th Cir. 2017)

(affirming the district court's decision to sanction). But simply providing last minute notice "of the logistical and substantive obstacles to settlement" likely does not warrant sanctions. *Adams v. Corr. Corp. of Am.*, No. 1:10-CV-259, 2011 WL 4974198, at *4 (M.D. Pa. Oct. 19, 2011).

Federal courts "have no authority to force a settlement." *Goss Graphics Sys., Inc. v. DEV Indus., Inc.*, 267 F.3d 624, 627 (7th Cir. 2001). "'The law does not countenance attempts by courts to coerce settlements.'" *Id.* (quoting *In re Ashcroft*, 888 F.2d 546, 547 (8th Cir. 1989)). In *Goss*, the district court refused to reinstate a suit (dismissed in anticipation of settlement) after the parties did not settle. The Seventh Circuit held that this was error: "Maybe the plaintiff was less forthcoming in settlement negotiations than it should in some abstract sense have been, but that was its right. It did not disobey any order of the district court relating to the settlement process." *Id.* at 628.

## B.

Tuscola's theory of bad faith is necessarily subjective. As it recognizes, Tuscola cannot lay claim to an entitlement to settlement. Accordingly, it cannot point only to the outcome of settlement negotiations as evidence of bad faith. And, similarly, Tuscola cannot argue that Defendants' failure to provide counteroffers was bad faith.[6] Rather, Tuscola's argument is focused solely on Defendants' subjective *intentions*. *See* Mot. Sanctions at 10 ("In the end, the result of mediation would have been precisely the same had the parties not attended at all. Based on the Township's conduct throughout the course of the mediation, it is evident that the Township never had any intention of engaging in good faith negotiations. Instead, the Township wanted to cause Tuscola Wind III to incur unnecessary mediation expenses and to gain insight into Tuscola Wind III's operations without providing anything in return.").

---

[6] And, likewise, Tuscola does not argue that Defendants expressly violated any court order. *See Goss*, 267 F.3d at 628.

In practice, it is extremely difficult to distinguish between unsuccessful negotiations made in good faith and negotiations made in bad faith and with the purpose of forcing the opposing party to incur expenses. There is no evidence to believe that the latter scenario occurred here. Tuscola faults Defendants for representing that they "were open to discussing a resolution that did not involve an $L_{max}$ standard" and then later refusing to "discuss any resolution short of full compliance with an $L_{max}$ standard." Mot. Sanctions at 4. Defendants respond to this assertion by noting that the Township's litigation position (that $L_{max}$ was required) had been fully briefed prior to mediation and that adherence to that position cannot constitute bad faith. Tuscola, in turn, argues that the "Township should have informed Tuscola Wind III at the outset that it would never be willing to meaningfully discuss a resolution that allowed for some turbines in the Township." Pl. Reply Br. at 4. Tuscola thus repeats a belief it has consistently made during this litigation: that if an $L_{max}$ standard is imposed, no turbines can be sited in the Township. But Defendants are unpersuaded that is true.

This difference of opinion appears to have led to the present motion for sanctions. Settlement discussions included consideration of a draft ordinance the Township Board was deliberating. Tuscola brought an engineering representative to the final settlement conference. The engineer was familiar with the economics of siting a viable project and explained why no turbines could be cited under the standards being considered by the Township. The explanation was persuasive. The Township did not attempt to refute the assertion. It may be reasonable for Tuscola to believe it is a victim of a bait and switch scheme, having been induced to invest in the SLUP application under the initial ordinance only for the Township to interpret the ordinance in an adverse manner and then consider amending the ordinance so that no further wind projects will progress. But consistency is a virtue to which individuals aspire. Elected boards are not persons

and absent contractual reliance, boards can change in composition and policy. The fact that those changes occurred here is not evidence of bad faith. More must be shown.

It should be noted that the independent mediator, Bruce Neckers, submitted a written report to the Court after mediation. *See* Neckers Rep., ECF No. 51, Ex. A. Mr. Neckers indicated that no settlement was reached, but indicated that "[i]t was a pleasure to work with the parties and their very able counsel." *Id.* The report thus provides no indication that Mr. Neckers believed either party had participated in bad faith. Likewise, in its own observations of the parties, the Court has not observed bad faith behavior.

In short, there is no objective evidence of bad faith here. The parties' relationship has been confrontational, but Defendants' actions have not exceeded the reasonable bounds of advocacy during extended litigation. Courts must be cautious before exercising their inherent powers to sanction parties. Where no court orders have been violated and there are several possible explanations for a party's conduct (only one of which involves bad faith), sanctions are not warranted. To the contrary, imposing sanctions in this situation would create a very real risk of chilling parties from exploring settlement. Tuscola's aspersions regarding Defendants' subjective intentions during settlement negotiations do not justify sanctions. The motion for sanctions will be denied.

## V.

Accordingly, it is **ORDERED** that Plaintiff Tuscola's motion for reconsideration, ECF No. 41, is **DENIED**.

It is further **ORDERED** that Plaintiff Tuscola's motion for sanctions, ECF No. 46, is

**DENIED.**

Dated: March 12, 2018                       s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 12, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager