UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TUSCOLA WIND III, LLC,

        Plaintiff,                         Case No. 17-cv-10497

v                                                             Honorable Thomas L. Ludington

ALMER CHARTER TOWNSHIP, et al,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**

On February 15, 2017, Plaintiff Tuscola Wind III, LLC, ("Tuscola") filed a complaint naming the Almer Charter Township and that Township's Board of Trustees as Defendants. ECF No. 1. Count One of the Complaint is the "Claim of Appeal." Compl. at ¶¶ 100–124. Tuscola Wind's claims arise out of Defendants' denial of a Special Land Use Permit ("SLUP") that would have permitted Tuscola Wind to construct the "Tuscola III Wind Energy Center" in Tuscola County, Michigan. Compl. at 6. Oral argument on the claim of appeal was held on October 5, 2017. Approximately one month later, the Court issued an opinion and order affirming the Almer Charter Township's denial of the SLUP application. ECF No. 39.

On February 26, 2018, Defendants filed a motion for summary judgment on the remaining counts of the complaint. ECF No. 55. Specifically, Defendants argued that no violation of procedural due process rights occurred, that no equal protection violation occurred, that Tuscola's Zoning Enabling Act claim is meritless, and that Tuscola's Open Meetings Act claim should be dismissed. On April 24, 2018, Defendants filed a motion in limine seeking to exclude evidence regarding noise emissions from Caro Motorsports from admission at trial. ECF No. 64. The Court

granted the motion for summary judgment in part and denied the motion in limine as moot. The Court dismissed Counts Two, Three, and Four.

The Court dismissed Count Five in part with one issue surviving. The surviving issue was whether the Township violated the Michigan Open Meetings Act (OMA) because of the use of certain communication procedures. The inquiry focused on two emails sent by Jim Tussey on December 16, 2016 and a third email also sent by Mr. Tussey on December 26, 2016. These emails presented a genuine issue of material fact as to whether the Township violated OMA and thus, summary judgment was not granted on this issue.

On June 27, 2018, Defendants filed a motion for leave to file a second motion for summary judgment on the surviving issue. ECF No. 72. The Court granted the motion. ECF No. 74. On July 6, 2018, Defendants filed a second motion for summary judgment on the remaining issue. ECF No. 75. Specifically, Defendants argued that Plaintiff sought an advisory opinion and that OMA does not permit the declaratory relief that Plaintiffs seek. Defendants further argued that Plaintiffs cannot establish by admissible evidence violations of OMA by Defendants and that any other evidence would be inadmissible under the "best evidence rule." For the following reasons, the second motion for summary judgment will be granted.

## I.

In the November 3, 2017 opinion and order, the Court summarized, at length, the procedural and factual history of Tuscola's SLUP application and the Township's consideration of the same. Because those facts have considerable relevance to the presently disputed issues, large portions of that factual summary will be reproduced here.[1]

---

[1] For the full summary, *see* Nov. 3, 2017, Op. & Order at 1–26.

Tuscola Wind III, LLC, is a Delaware limited liability company, which is indirectly wholly owned by NextEra Energy Resources, LLC. Tuscola Wind SLUP App. at 1, ECF No. 30, Ex. B. Tuscola is attempting to build the "Tuscola III Wind Energy Center" in Tuscola County, Michigan. *Id.* The project, if completed, would include 55 wind turbines in Fairgrove, Almer, and Ellington Townships, and would produce enough energy to supply 50,000 homes with wind energy. *Id.*

The Almer Township Zoning Ordinance characterizes wind energy systems as special land uses. As such, Tuscola was required to seek a Special Land Use Permit ("SLUP") from the Township for the project. *See* Almer Zoning Ord. Art. 24, ECF No. 30-2, Ex. A. Pursuant to Section 2401 of the Zoning Ordinance, the first step in receiving approval for a wind energy system is to submit a SLUP application to the Township's Planning Commission. *Id.* at § 2401. Upon receipt of the application, the Planning Commission is required to hold a public hearing within 45 days. *Id.* After the public hearing, the Planning Commission recommends either granting or denying the application to the Township Board and must state its reasons for the decision. *Id.* Once the Planning Commission issues its recommendation, the Township Board will render a decision on the SLUP application. *Id.*

On September 23, 2016, Tuscola submitted its SLUP application to the Almer Township Planning Commission. To assist in its consideration of the application, the Township retained the Spicer Group, Inc., an engineering consulting firm. On November 8, 2016, the Spicer Group submitted a report to the Planning Commission analyzing Tuscola's SLUP application. Spicer Rep., ECF No. 30, Ex. F. In the report, the Spicer Group concluded that Tuscola had complied with many, indeed most, of the Zoning Ordinance's requirements. But the Spicer Group did identify a number of outstanding issues. Among other recommendations, the Spicer Group suggested that the Planning Commission should require Tuscola to commission or identify an

economic impact study for the proposed Almer Township project. *Id.* at 5. The Spicer Group also noted that Tuscola had not provided information confirming that the proposed turbines had a braking device which complied with the Zoning Ordinance. The Spicer Group explained that Tuscola was seeking an exception to certain Zoning Ordinance requirements: first, instead of building an 8-foot fence around the turbines, Tuscola was requesting leave to keep the structures locked at all times; and, second, Tuscola was seeking leave to build aboveground transmission lines. Finally, the Spicer Group indicated that Tuscola's noise emissions report left several questions unanswered, including whether the 45 dBA limit was measured to the closest road, or simply to the closest road adjacent to a non-participating property. *Id.* at 7.

On November 10, 2016, the Planning Commission held a public hearing to discuss the SLUP application. Ultimately, the Planning Commission concluded that additional information was necessary before the SLUP application could be ruled upon. Accordingly, the public hearing was adjourned. After the hearing, Tuscola sent a number of responses to the Planning Commission which addressed the issues and concerns identified by the Spicer Group and the Planning Commission.

On November 8, 2016, four new Board members were elected. According to Tuscola, all four new members were "part of the anti-wind Ellington-Almer Concerned Citizens Group." Pl. App. Br. at 6, ECF No. 31. The new Board members took office on November 20, 2016, and held a special meeting on November 22, 2016.

The new Board approved the "Wind Energy Conversion Systems Moratorium Ordinance" at the November 22, 2016, special meeting. Moratorium, ECF No. 30, Ex. M. *See also* Nov. 22, 2016, Meeting Minutes, ECF No. 30, Ex. N. In the moratorium, the Board indicated that applications for "Wind Energy Conversion Systems may be proliferating" and so "[t]he Township

Board requires sufficient time for enactment of amendments to its Zoning Ordinance to establish reasonable regulations pertaining to the establishment, placement, construction, enlargement, and/or erection of Wind Energy Conversion System." Moratorium at 2. Thus, the Board enacted a

> moratorium, on a temporary basis, on the establishment, placement, construction, enlargement, and/or erection of Wind Energy Conversion Systems within the Township and on the issuance of any and all permits, licenses or approvals for any property subject to the Township's Zoning Ordinance for the establishment or use of Wind Energy Conversion Systems. . . . [T]his Ordinance shall apply to any applications pending before any Township board or commission, including the Township Board, Planning Commission or Zoning Board of Appeals.

*Id.* at 3.

After a second public hearing, Tuscola, the Spicer Group, and the Planning Commission engaged in correspondence regarding the issues identified at the hearing. On January 4, 2017, the Planning Commission held its third and final public hearing on the SLUP application. Jan. 4, 2017, Hearing Tr., ECF No. 30, Ex. X. At the hearing, Tuscola summarized the documents it had submitted since the last hearing. Planning Commission member Daniels then moved to recommend denial of the SLUP application. *Id.* at 44. After discussing their opinions on the application, the Planning Commission voted 3 to 1 to recommend denial of the SLUP application (two members did not vote because of a conflict of interest). *Id.* at 51–52.

On January 17, 2017, the Almer Township Board held a public meeting to review the Planning Commission's recommendation regarding the SLUP application. Jan. 17, 2017, Tr., ECF No. 30, Ex. DD. After opening the floor to public comments (including comments by a Tuscola representative), the Board discussed the Planning Commission's recommendation to deny the SLUP application. Every Board member to discuss the recommendation on the record was supportive of the Planning Commission's rationale for denial. And most Board members appeared to focus on the noise emissions issue. For example, Board Member Rosenstangel stated that the

Planning Commission's recommendation was "very well put together. And my concern was the 45 decibels shall not exceed. And I think that's what we should stick with is it shall not exceed the 45 decibels." *Id.* at 19. Board Member Graff made a similar statement:

> I also agree with the shall not exceed. I look at this not any different than a speed limit. If you're going 55 miles an hour, 55 miles an hour is the speed limit that you're supposed to have, you can't average it out. You can't drive from Saginaw to Cass City and go 75 miles an hour, but you have to slow down for all the little towns in between. When the police officer stops you outside of Cass City, you don't say, well, you have to relook at it because, if you average it out, I was only going 55 miles an hour.

*Id.* at 20–21.

Likewise, Board Member Tussey (who is the Board's Planning Commission representative) reiterated his reasons for opposing the SLUP application. Ultimately, the Almer Township Board voted 5 to 1 to deny the SLUP application. *Id.* at 33–35.

The Board simultaneously issued a Resolution articulating its rationale for denying the SLUP application. Res. Deny. SLUP, ECF No. 30, Ex. FF. In the Resolution, the Board identified five areas in which the SLUP application did not comply with the Zoning Ordinance. First, the Board faulted Tuscola for not providing an adequate economic impact study. Despite being asked to "provide a property values analysis that was localized to Almer Township," Tuscola "provided property value analyses based on other states, as well as some information concerning *personal* property values in Michigan, but still provided no *real property* value analyses using Michigan data." *Id.* at 6–7 (emphasis in original).

Second, the Board found that the SLUP application did not comply with the Zoning Ordinance's limit on noise emissions.

Third, the Board explained that Tuscola had not complied with the ordinance's requirement that an eight-foot security fence be placed around the turbines. The Board acknowledged that Tuscola sought a variance from that requirement from the Planning Commission, but noted that

the variance was not approved. And the Board concurred with that decision: "The Township Board also does not approve this alternative, as the Township Board finds that the proposed alternative of having no fence will not adequately protect the public health, safety, and welfare." *Id.* at 10.

Fourth, the Board faulted Tuscola for not providing the turbine safety manual and thus confirming that the turbines are equipped with an adequate braking device: "The Applicant has withheld documentation . . . that would identify the braking device's capability, citing the Applicant's nondisclosure agreement with GE." *Id.* at 10–11.

Fifth, the Board found that Tuscola had not complied with the ordinance's requirement that the electrical lines stemming from the turbines be placed underground. Again, the Board concurred with the Planning Commission's refusal to waive that requirement: "The Township Board . . . does not grant the requested waiver because it finds that the proposed aboveground lines would be detrimental to the aesthetics of the Township and will not protect the public health, safety, and welfare." *Id.* at 10.

Finally, the Board noted that it had previously approved a moratorium on wind energy projects in the Township and thus was precluded from approving the SLUP application even if it had complied with the Zoning Ordinance.

The surviving issue centers on three emails sent by James Tussey in December 2016. On December 16, 2016, Mr. Tussey emailed Robert Braem and stated that there was a change in the Board's communication procedure. Tussey Emails, ECF No. 62-21, Ex. 20. He explained that when sending a group email to other Board members, a member should use a blind carbon copy. This would avoid creating a quorum and an "unlawful meeting." *Id.* Mr. Tussey then forwarded the email to James Mantey. On December 26, 2016, Mr. Tussey emailed the entire Almer Board in the form of a blind carbon copy. Tussey Email, ECF No. 62-22, Ex. 21. In the email, Mr. Tussey

discussed certain outstanding questions regarding Tuscola's SLUP application and again stated the change in procedure. None of the email chains involve any replies by Board members or any indication that a discussion chain resulted.

**III.**

Defendants have now filed a second motion for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**IV.**

The Township seeks summary judgment on the issue of whether the Township violated the OMA. Tuscola first raised this issue in Count Five of its complaint. It argued that the Township violated OMA when "Board members continued engaging in concealed deliberations after they were sworn into office" because the Board implemented an email policy whereby "the members would send an email to themselves and blind carbon copy the remaining Board members." Pl. Resp. Br. at 24. In support of this assertion, Tuscola cited the December 2016 emails from Mr. Tussey. *Id.* Tussey Emails, ECF No. 62, Exs. 20–21.

**1.**

As stated above, the moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Township has met this burden proving that there is no genuine issue of material fact as to whether it violated OMA. To qualify as a meeting of a public body under OMA, there must be: (1) a quorum (2) deliberation or rendering of a decision (3) on a matter of public policy. *Ryant v. Cleveland Twp.*, 608 N.W.2d 101, 103–104 (2000). The first and third requirements are met, but not the second requirement. Concerning the first requirement, the December 26 email constituted a quorum because Mr. Tussey sent the email to seven of the eight Board members. Tussey Email, ECF No. 62-22, Ex. 21. Concerning the second requirement, the email was on a matter of public policy because it discussed Mr. Tussey's views on Tuscola's pending SLUP application. *Id.*

These emails do not fulfill the second requirement of "deliberation or rendering of a decision." *Ryant* at 104. The court in *Ryant*, using Black's Law Dictionary and Webster's Dictionary, interpreted this to mean

> '[T]he act of *carefully considering* issues and options before making a decision or taking some action…as by analyzing, *discussing*, and weighing the evidence' The word 'discussion' is defined as the act of exchanging views on something; a debate.

*Id.* at 6. The court went on to hold that there must be some form of discussion or exchange of views in order to find that deliberation occurred. *Id.* at 8. The defendants must have been more than observers to the discussion.

*Markel v. Mackley*, 2016 Mich App. LEXIS 2004 appears to be the only case that has addressed whether email communications can qualify as deliberations under the OMA. In *Markel*, the defendants exchanged multiple emails amongst themselves. During the public meeting, they voted along the same lines articulated in the emails. *Id.* at 12. The court held that defendants

violated the OMA, despite the fact that defendants did not respond to all of the emails. *Id.* The facts of this case differ however, from those in *Markel* because the Board members did not exchange multiple emails as the defendants in *Markel* did. The Board members received Mr. Tussey's emails, but never responded to them. Tussey Emails, ECF No. 62, Exs. 20–21. Their communications never rose to the level of a deliberation or a discussion. These differ from the defendants in *Markel* who responded to at least some of the emails and had thus engaged in some form of reciprocal communication or deliberation.

The facts are more akin to those of *Mandich* in which defendants met outside of a public meeting, but did not violate the OMA because "no discussion took place, nor were any concerns voiced." *Mandich v. Owendale Gagetown*, 2010 Mich. App. LEXIS 2384. Similarly here, no deliberation or discussion occurred. Without a response, there can be no deliberation by the Board members. Without deliberation by the Board members, there can be no OMA violation.

Tuscola has not identified evidence showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Of the thousands of pages of emails in Tuscola's possession, Tuscola has only been able to identify these three emails as potential evidence of an OMA violation. It has failed to provide evidence that any Board member responded to the emails in question or engaged in any other form of deliberation outside of a public meeting. Tuscola has presented the same three emails that it included in its original complaint. The court has already held that:

> [T]he emails identified by Tuscola do not clearly constitute violations of the OMA. None of the identified email chains involve replies by other commissioners, and no evidence has been presented to suggest that Board members later made decisions at public meetings in reliance on information received by email.

June 12, 2018, Op. & Order at 40, ECF No. 70. Tuscola has provided no depositions, affidavits, or additional evidence supporting its claim. Thus, Tuscola has not established a genuine issue of material fact.

**2.**

The remaining issue is whether "the identified emails do identify a procedure which expressly contemplated communications which could violate the OMA." *Id.* at 40. The Township has provided affidavits from the Board members all affirming that they did not engage in quorum communications outside of a public meeting. Def.'s Second Mt. for Summ. J., ECF No. 75-5, Ex. D. Tuscola contends that "the Township's self-serving affidavits carry little weight in demonstrating that the OMA was not violated as a matter of law." Pl.'s Resp. Br. To Def.'s Second M. for Summ. J. at 5. To the contrary, these affidavits have evidentiary value, and they have not been rebutted by Tuscola. Tuscola claims that the combination of the three emails, the Township's affidavits, and the Township denying Tuscola's SLUP application provides the circumstantial evidence necessary to demonstrate a material issue of fact. *Id.* at 4. Although this may have been true prior to the current motion for summary judgment, Defendants have now come forward with competent evidence that they engaged in no communications outside a public meeting.

Tuscola argues that Mr. Schriber's affidavit is suspect because it differs from the affidavits of the other five Board members. *Id.* at 5. Mr. Schriber's affidavit differs in appearance and language from the other affidavits, but its contents assert assurances similar to the other affidavits. Def.'s Second Mt. for Summ. J., ECF No. 75-5, Ex. D. Mr. Schriber's affidavit does not specifically address email communications among Board members, but it does assert that he "did not meet with a quorum of the Board outside of public meetings to deliberate or render any

decisions." *Id.* Tuscola has not responded by presenting any evidence contradicting this representation.

Tuscola also argues that the Board's denial of its SLUP application raises an issue of material fact. *Id.* at 7. Tuscola concedes that the Court has already ruled that the Board's substantive decision to deny the SLUP application was valid, but that the Court has not yet ruled on the validity of the Board's procedure in making that decision. *Id.* at 13. However, in its prior opinion, the Court noted that "no evidence has been presented to suggest that Board members later made decisions at public meetings in reliance on information received by email." June 12, 2018, Op. & Order at 40, ECF No. 70. Tuscola argues that the Board relied on information communicated by email by engaging in "round-the-horn" decision-making by forwarding emails to each other. Pl. Resp. to Def.'s Second Mot. for Summ. J. at 6–7. The actions by the Board members differs from those in *Booth Newspapers* in which the court found evidence of "round-the-horn" decisions-making. *Booth Newspapers v. University of Mich. Bd. of Regents*, 444 Mich. 211 (Mich. 1993). In that case, plaintiffs provided depositions of Board members admitting that they engaged in sub-quorum communications outside of a public meeting. *Id.* at 219 n. 8. Here, there is no evidence that "round-the-horn" decision-making occurred. One Board member sent three emails to other Board members, but there is no evidence that they deliberated, made a decision, or replied to the emails. At this point, Tuscola does not have to prove that this form of decision-making occurred, but it at least must set out specific facts that show a genuine issue for trial. It has not done so.

### 3.

Tuscola also claims that the Township withheld a document in another case and that this creates an issue of material fact as to whether the Township violated the OMA. Tuscola has failed to make a plausible claim of spoliation, even under the Second Circuit standard cited by Tuscola.

Pl. Resp. to Def.'s Second Mot. for Summ. J. at 11. (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (holding that in "borderline cases, an inference of spoliation, in combination with some (not insubstantial) evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment.")). Tuscola has not furnished any substantial evidence that the Township violated the OMA and thus cannot claim that the Township's withheld email in another case creates an inference of spoliation.

The Township claims that in Tuscola's complaint, Tuscola only sought invalidation of the Moratorium under the OMA, not invalidation of the Board's decision on Tuscola's SLUP application. Pl. Second Mt. for Summ. J. at 4–8. The question will not be addressed because the Township did not violate OMA.

**V.**

Accordingly, it is **ORDERED** that Defendants' second motion for summary judgment, ECF No. 75, is **GRANTED**.

It is further **ORDERED** that Count Five of Plaintiff Tuscola's complaint, ECF No. 1, is **DISMISSED**.

Dated: August 14, 2018          s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 14, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager